## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civ. A. No. 1:20-cv-3415

SHANE CLARK, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

QEP RESOURCES, INC.,

     Defendant.

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.　　Shane Clark (Clark) brings this lawsuit to recover unpaid overtime wages and other damages from QEP Resources, Inc. (QEP) under the Fair Labor Standards Act (FLSA).

2.　　Clark worked for QEP as a Wellsite Geologist. from approximately October 2017 until December 2018.

3.　　Clark and the other similarly situated geologists who worked for QEP in the last three years regularly worked more than 40 hours a week.

4.　　But these geologists never received overtime for the hours they worked in excess of 40 hours in a single workweek.

5.　　Instead of receiving overtime as required by the FLSA, QEP classified Clark and other similarly situated geologists as independent contractors and these geologists were compensated with a flat amount for each day worked (a day-rate) without overtime compensation.

6.　　Neither Clark, nor any other similarly situated geologists who worked for QEP and received a day-rate, received a guaranteed salary.

7.　　This collective action seeks to recover the unpaid overtime wages and other damages owed to these geologists.

### JURISDICTION & VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      Venue is proper under 28 U.S.C. § 1391(b).

10.     QEP is headquartered in Denver, Colorado in this District and Division.

### PARTIES

11.     Clark worked for QEP as a Wellsite Geologist. from approximately October 2017 until December 2018.

12.     Throughout his employment with QEP, Clark was classified as an independent contractor and paid a day-rate with no overtime compensation.

13.     Clark's relationship with QEP was an employer/employee relationship.

14.     Clark's written consent is attached as Exhibit A.

15.     Clark brings this action on behalf of himself and all other similarly situated geologists who were classified as independent contractors and paid by QEP's day-rate system.

16.     Although these geologists regularly worked more than 40 hours each week, they were paid a flat amount for each day worked and with no overtime compensation for the hours they worked in excess of 40 each week in violation of the FLSA.

17.     The collective of similarly situated geologists or putative class members sought to be certified is defined as follows:

> **All individuals who perform work as geologists, employed by, or working on behalf of, QEP Resources, Inc. who were classified as independent contractors and paid a day-rate with no overtime at any time during the past three (3) years** (the Putative Class Members).

18.     The Putative Class Members are easily ascertainable from QEP's and its staffing companies' business and personnel records.

19.     Defendant QEP is a Delaware corporation that may be served with process by serving its registered agent: C T Corporation System, 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112-1268.

## COVERAGE UNDER THE FLSA

20.     At all relevant times, QEP has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21.     At all relevant times, QEP has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22.     At all relevant times, QEP has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). QEP has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, laptops, and oilfield equipment - that have been moved in or produced for commerce.

23.     In each of the last three years, QEP has had annual gross volume of sales made or business done at of least $1,000,000.

24.     At all relevant times, Clark and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

25.     QEP treated Clark and the Putative Class Members as employees and uniformly dictated the pay practices applied to Clark and the Putative Class Members.

26.     QEP's misclassification of Clark and the Putative Class Members as independent contractors does not alter their status as employees for purposes of the FLSA.

27.     QEP's uniform day-rate scheme, deprived its geologists of overtime compensation for weeks in which these geologists work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

28.     QEP is an independent crude oil and natural gas exploration and production company. http://www.qepres.com/about/ (last visited on November 13, 2020).

29.     To provide its services, QEP hires contractors (like Clark) to perform work as "geologists."

30.     Clark worked for QEP as a Wellsite Geologist. from approximately October 2017 until December 2018.

31.     Many of these geologists worked for QEP on a day-rate basis and make up the proposed Putative Class.

32.     For example, Clark received a day-rate of $300 for each day he worked regardless of the number of hours he worked.

33.     These geologists perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

34.     QEP classified many of these geologists (including Clark and the Putative Class Members) as independent contractors.

35.     But QEP did not hire these geologists on a project-by-project basis.

36.     Rather, QEP hired and treated these geologists just like regular, even if sometimes short-term, employees.

37.     During the relevant period, these geologists regularly worked for QEP in excess of 40 hours a week for weeks at a time.

38.     Usually the geologists worked around 84 hours a week.

39.     The geologists routinely worked 7 days a week.

40.     The geologists worked in the field with the other wellsite workers.

41.     During the relevant period, these geologists worked for QEP on a day-rate basis.

42.     During the relevant period, these geologists were not paid overtime for the hours they worked for QEP in excess of 40 hours each week.

43.     These geologists make up the proposed Putative Class.

44.     While exact job titles and job duties may differ, QEP subjected these geologists to the same or similar illegal pay practices for similar work.

45.     For example, Clark worked for QEP as a Wellsite Geologist in Louisiana and Wyoming.

46.     This work included taking samples of the rocks and entering findings into "mud logs."

47.     It also included monitoring the gas levels throughout QEP's drilling process.

48.     QEP directed Clark to use DMS Solutions as his staffing company.

49.     Clark reported directly to QEP management-level employees.

50.     Throughout his employment with QEP, Clark regularly worked more than 40 hours each week without receiving overtime compensation. Instead, Clark received a day-rate for each day worked, regardless of how many hours he worked in a day or week.

51.     During his time with QEP, Clark regularly worked more than 12 hours each day, often for weeks at a time.

52.     When Clark was scheduled to work by QEP, Clark normally worked over 84 hours a week.

53.     Clark did not exercise discretion and judgment as to matters of significance.

54.     To the contrary, Clark's work was governed entirely by QEP.

55.     The Putative Class Members performed the same general job duties performed by Clark. That is work to assist in the furtherance of oil production.

56.     The Putative Class Members worked the same or similar schedule worked by Clark, regularly working more than 40 hours each week. Clark's work schedule is typical of the Putative Class Members.

57.     During the relevant period, QEP classified Clark and the Putative Class Members as independent contractors and paid them a day-rate basis with no overtime compensation.

58.     Clark and the Putative Class Members never received a salary.

59.     If Clark and the Putative Class Members did not work in a week, they did not receive a guaranteed amount of at least $455.

60.     Clark and the Putative Class Members received a day-rate regardless of the number of hours or days they worked in a week, even if they worked more than 40 hours in a workweek.

61.     Without the job performed by Clark and the Putative Class Members, QEP would not have been able to complete its business objectives.

62.     Clark and the Putative Class Members were economically dependent on QEP and relied on QEP for work and compensation.

63.     QEP determined the amount and type of compensation paid to Clark and the Putative Class Members.

64.     QEP set Clark's and the Putative Class Members' rates of pay, their work schedules, and effectively prevented them (or outright prohibited them) from working other jobs for other companies while they are working on jobs for QEP.

65.     Clark and the Putative Class Members worked in accordance with the schedule set by QEP.

66.     QEP prohibited Clark and the Putative Class Members from subcontracting out the work they are assigned by QEP.

67.     Clark and the Putative Class Members had to follow QEP's policies and procedures.

68.     Clark and the Putative Class Members had to adhere to the quality standards put in place by QEP.

69.     Clark and the Putative Class Members did not substantially invest in the equipment or tools required to complete the overall job to which they were assigned. Instead, QEP provided Clark and the Putative Class Members with the programs and facilities necessary for them to perform the work required of them.

70.     Clark and the Putative Class Members did not provide the significant equipment and programs they worked with daily, such as the survey equipment, office space, computers, and other necessary equipment.

71.     QEP made these large capital investments in buildings, machines, equipment, tools, and supplied the business in which Clark and the Putative Class Members work.

72.     Clark and the Putative Class Members do not incur operating expenses like rent, payroll, marketing, and insurance.

73.     Clark and the Putative Class Members did not market their services while employed by QEP.

74.     While employed by QEP, Clark and the Putative Class Members worked exclusively for QEP.

75.     QEP set Clark's and the Putative Class Members' work schedule.

76.     At all relevant times, QEP maintained control, oversight, and direction of Clark and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

77.     QEP controlled Clark's and the Putative Class Members' pay.

78.     Likewise, QEP controlled Clark's and the Putative Class Members' work.

79.     Clark's and the Putative Class Members' work had to adhere to the quality standards put in place by QEP.

80.     Clark and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other geologists in their respective positions) to perform their job duties.

81.     QEP knew Clark and the Putative Class Members regularly worked for 12 or more hours a day for weeks at a time.

82.     QEP's records reflect the fact that Clark and the Putative Class Members regularly worked far in excess of 40 hours in certain workweeks.

83.     Clark and the Putative Class Members did not receive overtime for hours worked in excess of 40 in any of those weeks. Instead, Clark and the Putative Class Members were paid on a day-rate basis.

84.     QEP set these geologists' schedules and compensation; supervised them; and required them to adhere to strict guidelines, directives, and QEP's policies and procedures.

85.     The work Clark and the Putative Class Members performed was an essential part of QEP's core businesses.

86.     QEP controlled Clark's and the Putative Class Members' opportunities for profit and loss by dictating the days and hours they worked and the rates and method in which they were paid.

87.     QEP exercised control over the hours and locations Clark and the Putative Class Members worked, the tools and equipment they used, the rigs they worked on, and the rates of pay they received.

88.     Even though Clark and the Putative Class Members may have worked away from QEP's offices without the constant presence of QEP's supervisors, QEP still controlled significant aspects of their job activities by enforcing mandatory compliance with its policies and procedures.

89.     Very little skill, training, or initiative was required of Clark and the Putative Class Members to perform their job duties.

90.     Indeed, the daily and weekly activities of Clark and the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by QEP.

91.     Virtually every job function was predetermined by QEP, including the tools and equipment used, the schedule of work, and related work duties.

92.     QEP prohibited Clark and the Putative Class Members from varying their job duties outside of predetermined parameters and required Clark and the Putative Class Members to follow its policies, procedures, and directives.

93.     Clark and the Putative Class Members performed routine job duties largely dictated by QEP.

94.     All of the Putative Class Members performed similar job duties and were subjected to the same or similar policies and procedures which dictated the day-to-day activities they performed.

95.     All of the Putative Class Members worked similar hours and were denied overtime as a result of the same illegal pay practice.

96.     All of the Putative Class Members worked in excess of 40 hours each week and often worked more than 84 hours in a workweek.

97.     QEP uniformly denied Clark and the Putative Class Members overtime for the hours they worked in excess of 40 hours in a single workweek.

98.     Clark and the Putative Class Members were not employed on a salary basis.

99.     Clark and the Putative Class Members did not, and never did, receive guaranteed weekly compensation of at least $455 (now $684) irrespective of days worked (i.e., the only compensation they received was the day rate they were assigned for all hours worked in a single day or week).

100.    QEP's day-rate policy violated the FLSA because it deprived Clark and the Putative Class Members of overtime for the hours they worked in excess of 40 hours in a single workweek.

101.    QEP knew Clark and the Putative Class Members worked more than 40 hours in a week.

102.    QEP knew, or showed reckless disregard for whether, Clark and the Putative Class Members were improperly classified as independent contractors (as opposed to employees).

103.     QEP knew, or showed reckless disregard for whether, Clark and the Putative Class Members were not exempt from the FLSA's overtime provisions.

104.     Nonetheless, Clark and the Putative Class Members were not paid overtime.

### COLLECTIVE ACTION ALLEGATIONS

105.     Clark brings this claim as a collective action under the FLSA.

106.     The Putative Class Members were victimized by QEP's pattern, practice, and/or policy which was in willful violation of the FLSA.

107.     Other Putative Class Members worked with Clark and indicated they were classified and paid in the same manner (as independent contractors paid a day-rate with no overtime) and performed similar work.

108.     Based on his experiences with QEP, Clark is aware that QEP's illegal practices were imposed on the Putative Class Members.

109.     The Putative Class Members are similarly situated in all relevant respects.

110.     Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

111.     The illegal day-rate policy that QEP imposed on Clark was likewise imposed on all Putative Class Members.

112.     Numerous individuals were victimized by this pattern, practice, and policy which was in willful violation of the FLSA.

113.     The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

114.     The overtime owed to Clark and the Putative Class Members will be calculated using the same records and using the same formula.

115.     Clark's experiences are therefore typical of the experiences of the Putative Class Members.

116.    The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

117.    Clark has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

118.    Like each Putative Class Member, Clark has an interest in obtaining the unpaid overtime wages owed under federal law.

119.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

120.    Absent a collective action, many Putative Class Members will not obtain redress of their injuries and QEP will reap the unjust benefits of violating the FLSA.

121.    Further, even if some of the Putative Class Members could afford individual litigation against QEP, it would be unduly burdensome to the judicial system.

122.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

123.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

124.    Among the common questions of law and fact are:

    a.  Whether QEP employed the Putative Class Members within the meaning of the FLSA;

    b.  Whether QEP's decision to pay a day-rate with no overtime compensation to these workers was made in good faith;

    c.  Whether QEP's decision to classify these workers as independent contractors was made in good faith;

    d.  Whether QEP's violation of the FLSA was willful; and

    e.  Whether QEP's illegal pay practice applied to the Putative Class Members.

125.    Clark and the Putative Class Members sustained damages arising out of QEP's illegal and uniform employment policy.

126.    Clark knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

127.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to QEP's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

128.    QEP is liable under the FLSA for failing to pay overtime to Clark and the Putative Class Members.

129.    Consistent with QEP's illegal day-rate policy, Clark and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

130.    As part of its regular business practices, QEP intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Clark and the Putative Class Members.

131.    QEP's illegal day-rate policy deprived Clark and the Putative Class Members of the premium overtime wages they were owed under federal law.

132.    QEP was aware, or should have been aware, that the FLSA required it to pay Clark and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

133.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

134.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

- 12 -

135.    Those similarly situated employees are known to QEP, are readily identifiable, and can be located through QEP and its staffing companies' records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

136.    Clark realleges and incorporates by reference all allegations in preceding paragraphs.

137.    Clark brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

138.    QEP violated, and is violating, the FLSA by failing to pay Clark and the Putative Class Members overtime.

139.    QEP misclassified Clark and Putative Class Members for purposes of the FLSA overtime requirements.

140.    Clark and the Putative Class Members were QEP's employees for purposes of the FLSA overtime requirements.

141.    QEP was Clark's and the Putative Class Members' employer under the FLSA. QEP suffered or permitted Clark and the Putative Class Members to work for or on its behalf during the relevant period.

142.    QEP cannot meet its burden to demonstrate Clark and Putative Class Members are exempt from overtime under the administrative exemption.

143.    QEP cannot meet its burden to demonstrate the Clark and Putative Class Members are exempt from overtime under the executive exemption.

144.    QEP cannot meet its burden to demonstrate Clark and Putative Class Members are exempt from overtime under the professional exemption.

145.    QEP cannot meet its burden to demonstrate Clark and Putative Class Members are exempt from overtime under the highly compensated exemption.

146.    QEP misclassified Clark and the Putative Class Members as independent contractors.

147.    QEP failed to guarantee Clark and the Putative Class Members a salary.

148.    QEP failed to pay Clark and the Putative Class Members overtime.

149.    Clark and the Putative Class Members were paid a day rate while working for QEP.

150.    QEP knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Clark and the Putative Class Members overtime compensation.

151.    QEP's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

152.    Accordingly, Clark and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

153.    Clark demands a trial by jury.

## PRAYER

WHEREFORE, Clark, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

a.   An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

b.   A judgment against QEP awarding Clark and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

c.   Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

d.   An order awarding attorneys' fees, costs, and expenses;

e.   Pre- and post-judgment interest at the highest applicable rates; and

f.   Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
**Michael A. Josephson**
Texas Bar No. 308410
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Attorneys for Plaintiffs**